UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**DANIEL JACKSON,**

                Plaintiff,

v.                         **Case No. 14-cv-1194-pp**

**WARDEN BRIAN FOSTER,**
**DEPUTY WARDEN SARAH COOPER,**
**GUARD PUSICH,**
**GUARD BUTTERFIELD,**
**GUARD SWIEKATOWSKI,**
**GUARD HOLTERMAN,**
**GUARD HILBERT,**
**GUARD STEVENS,**
**GUARD HUCK,**
**STAFF J.D.**
**STAFF OWENS,**
**GUARD FISCH, and**
**STAFF DEGROOT,**

                Defendants.

**ORDER DENYING THE PLAINTIFF'S MOTION FOR RETURN OF FILING FEE (DKT. NO. 52) AND SCREENING THE PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 50)**

        In an order entered April 20, 2015, the court granted the plaintiff's motion for leave to proceed *in forma pauperis,* and denied many of his numerous motions for leave to file, to amend and to supplement his complaint. Dkt. No. 49. The court denied two additional motions for leave to supplement in a text-only order entered July 2, 2015. In the April 20, 2015, order, the court directed plaintiff to file one amended complaint on or before May 25, 2015. Id. The plaintiff filed an amended complaint on April 30, 2015, which is

1

Case 2:14-cv-01194-PP    Filed 10/09/15    Page 1 of 14    Document 54

now before the court for screening. In addition, on August 14, 2015, the plaintiff filed a motion for return of his filing fee. Dkt. No. 52.

I.      **THE PLAINTIFF'S MOTION FOR RETURN OF FILING FEE**

The plaintiff asks the court to return his initial partial filing fee. Dkt. No. 52. He suggests that the court has intentionally delayed deciding his case because he is a prisoner, and that it has denied him due process and equal protection of the laws. In asking the court to return the filing fee, the plaintiff references 28 U.S.C. §372(c)(17). <u>Id.</u>

Under the Prison Litigation Reform Act (PLRA), the plaintiff is required to pay the statutory filing fee of $350.00 for any civil action. <u>See</u> 28 U.S.C. §1915(b)(1). In this case, the court granted the plaintiff's motion for leave to proceed *in forma pauperis*, which means it allowed the plaintiff to pay $101.01 of the filing fee up front, and to pay the remainder of the filing fee in installments over time. Congress requires courts to charge filing fees in exchange for allowing parties to file certain documents. The fee does not guarantee a particular outcome, nor does it guarantee that the case will proceed in a particular manner. Parties pay a filing fee for the privilege of *filing* the complaint. The plaintiff filed a complaint. Thus, he owes the filing fee, regardless of whether he agrees or disagrees with how the case has progressed.

Section 372 of Title 28 does not provide the plaintiff any relief. That statute governs replacement of retired judges. The court suspects that the plaintiff meant to cite 28 U.S.C. §351, the section of the United States Code which lays out the procedure for filing complaints against federal judges. If the

2

plaintiff wishes to file a complaint against the judge presiding over his case, he should follow the procedures laid out in 28 U.S.C. §§351-364. The court notes, however, that none of those provisions provide that a court must return a filing fee to a dissatisfied party.

Finally, the court notes that while the plaintiff filed his initial complaint just over a year ago, on September 26, 2014, the court did not receive the initial partial filing fee until October 16, 2014. The court would not have taken any action on the complaint before the plaintiff paid that partial filing fee. Regardless, before the plaintiff even had paid that fee, he began to file motions to amend his complaint. Between October 9, 2014 and December 29, 2014 (while the case was before Judge Callahan), the plaintiff filed no fewer than ten (10) such motions (asking to amend, or to supplement, or to make his pleadings more definite). So, as of the date that the case transferred from Judge Callahan to Judge Pepper, the plaintiff had not filed a "final" version of his complaint that the court could screen; he was changing the allegations every several days.

After the case transferred to Judge Pepper on December 29, 2014, the plaintiff filed another twenty-two (22) pleadings, asking to amend or supplement the complaint or make his pleadings more definite. These continual updates and supplements prevented the court from screening the plaintiff's complaint; the court never could ascertain when the plaintiff had finally completed his claims, so that the court could screen them. Finally, on April 20, 2015, the court denied all the motions to supplement and ordered the

3

plaintiff to file a single amended complaint containing all of his allegations. Dkt. No. 49. The plaintiff filed that complaint on April 30, 2015. Dkt. No. 50.

It is true that five months have passed since the plaintiff filed his single amended complaint (and still he asked to amend THAT complaint after he filed it). That is a longer period of time than the court would like; it makes an effort to screen complaints promptly, to the extent that it can while handling all of the other cases on its docket (including criminal cases, which take priority under the Speedy Trial Act). This five-month delay, however, does not provide a legal basis for return of the plaintiff's filing fee. The court will deny that motion.

## II. SCREENING OF THE PLAINTIFF'S AMENDED COMPLAINT

### A. Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327.

4

"Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions

5

with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   Facts Alleged in the Amended Complaint

In his amended complaint, the plaintiff details a number of different incidents that he believes occurred in retaliation for the inmate complaints he filed against staff members at Green Bay Correctional Institution (GBCI). The plaintiff admits he filed "a barrage of complaints," and believes each of the defendants' actions were the result of his complaints. Dkt. No. 50. The plaintiff's claims implicate the thirteen named defendants and cover a time period of almost a year, starting on July 1, 2014.

The plaintiff alleges that defendants Foster, Cooper, Pusich, and Swiekatowski took actions which prevented him from obtaining tax forms. Id. at 1-2.

6

The plaintiff further alleges that Cooper intentionally denied the plaintiff's request to send funds from his prison trust account to his two-year-old son. Id. at 2. He also says Cooper intimidated and harassed the plaintiff. Id.

Defendant Butterfield is assigned to the GBCI property room and handles property prisoners purchase from vendors. Id. According to the plaintiff, Butterfield deprived him of a book that was imperative to his defense in his criminal appeal. Id. Butterfield also held the plaintiff's purchases for up to a month "in order to frustrate and provoke the plaintiff." Id.

Defendant Huck works in the mailroom at GBCI. Id. The plaintiff alleges that he opened and read the plaintiff's legal mail outside the plaintiff's presence and overcharged the plaintiff to mail out legal books. Id.

Defendant J.D. works in the business office at GBCI. Id. The plaintiff alleges that he deliberately prevented the plaintiff from purchasing a copy of the Federal Rules of Civil Procedure, as well as other legal books. Id. The plaintiff alleges that he was unable to use the law library and needed the legal books; he says he lost his petition for a writ of *habeas corpus* because he did not have the Federal Rules of Civil Procedure. Id.

The plaintiff alleges that on January 6, 2015, defendant Stevens confiscated the plaintiff's personal property. Id. He took a new pair of boxer shorts, a new pair of socks, a new pair of shower shoes, five "prison legal news," and one new toothbrush. Id.

The plaintiff alleges that on March 5, 2015, defendant Fisch confiscated two brand new legal books from the plaintiff. Id. The books were a Prisoner Self Help Litigation Manual and Webster's Unabridged Dictionary. Id.

According to the plaintiff, Swiekatowski is at the center of the retaliation against the plaintiff and is influencing others. Id. at 3. Specifically, Swiekatowski opened the plaintiff's non-legal outgoing mail on October 17, 2014, and wrote the plaintiff a conduct report for sending a card and three bags of sealed candy to his two-year-old son. Id. Swiekatowski also issued a false conduct report to the plaintiff for defending himself at the disciplinary hearing and sanctioned the plaintiff by denying him access to the law library. Id. The plaintiff alleges that his inability to access the law library prevented him from litigating his claims and caused him to lose his petition for a writ of *habeas corpus.* Id. Finally, on March 9, 2015, Swiekatowski denied the plaintiff's notary request, and the Brown County Clerk of Court would not accept without notarization a petition for a temporary restraining order and a petition for injunctive relief that the plaintiff attempted to file in that court. Id.

The plaintiff alleges that, beginning on September 22, 2014, defendant Holterman harassed and frustrated the plaintiff and impeded his access to the courts. Id. Holterman kicked the plaintiff out of the law library for being disruptive and began to file "numerous false conduct reports against the plaintiff in order to have him lock[ed]-down to long term segregation, and to keep plaintiff from accessing the law library." Id. Every time the plaintiff filed an inmate complaint regarding Holterman, Holterman filed false conduct

8

Case 2:14-cv-01194-PP    Filed 10/09/15    Page 8 of 14    Document 54

reports against the plaintiff. Id. This pattern of harassment continued into 2015, and caused the plaintiff to lose his petition for a writ of *habeas corpus*. Id. at 3-4. The plaintiff further alleges that Foster failed to intervene to stop this retaliation. Id. at 4.

The plaintiff alleges that in December 2014, defendant DeGroot denied the plaintiff access to the inmate complaint review system. Id. The plaintiff submitted four inmate complaints within two calendar weeks, which is allowed per GBCI policy. Id. Nevertheless, DeGroot refused to accept and process the timely filed complaints. Id.

On December 18, 2014, Holterman "conducted a bogus cell search of plaintiff cell [sic]." Id. When the plaintiff returned, defendant Hilbert was sitting on the plaintiff's bunk reading the plaintiff's legal mail. Id. When the plaintiff filed an inmate complaint regarding this issue, DeGroot refused to process the complaint. Id.

Defendant Owens excluded the plaintiff from the law library and impeded the plaintiff's access to the courts. Id. Owens denied all of the plaintiff's requests for extra law library time, even when the plaintiff provided Owens with proof of court deadlines. Id. Owens deliberately targeted the plaintiff due to the influence of other defendants and, as a result, the plaintiff could not properly research and litigate his petition for a writ of habeas corpus. Id.

Finally, the plaintiff references six fabricated conduct reports that he alleges Swiekatowski and Holterman authored between February 27, 2015, and March 16, 2015. Id. He states that defendant Pusich served as the hearing

9

officer for all six complaints, and misused disciplinary procedures against the plaintiff. Id. Pusich sanctioned the plaintiff to a long term in segregation. Id.

The plaintiff emphasizes that he is seeking to proceed on First Amendment retaliation claims under the "Continuous Harm Doctrine." Id. at 4-5. He also suggests that he would like to proceed on state law negligence claims against each of the defendants. Id. at 5. The plaintiff seeks declaratory relief, and compensatory and punitive damages. Id.

As a final note, the plaintiff says he "seeks damages for being placed in a single occupancy cell with another prisoner." Id. at 4. This claim is unrelated the plaintiff's retaliation claims, and there is no defendant identified or factual basis for this claim.

### C. Legal Analysis of Alleged Facts

The facts alleged in plaintiff's amended complaint implicate his First Amendment rights. To state a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). The plaintiff has filed numerous inmate complaints, which is a protected activity under the First Amendment.

The retaliatory actions the plaintiff describes vary widely in severity. Some of them may not be serious enough to deter First Amendment activity.

10

That is why the plaintiff asks to proceed under what he refers to as the continuous harm doctrine.

"A violation is called 'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001). There are no statute of limitations concerns here, but the doctrine may still apply.

In Limestone Development Corp. v. Village of Lemont, Ill., 520 F.3d 797, 801 (7th Cir. 2008), the Seventh Circuit said the "continuing violation" doctrine is misnamed and "is thus a doctrine not about a continuing, but about a cumulative, violation." Under either name, the doctrine "allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Id. (citations omitted).

In this case, it would be unreasonable to require the plaintiff to file thirteen separate lawsuits, each alleging a separate retaliation claim against each of the thirteen defendants. Additionally, the plaintiff's claims against the defendants share common underlying facts regarding his numerous inmate complaints. At this stage, the court will allow the plaintiff to proceed on First Amendment retaliation claims against each of the defendants. The court also will exercise supplemental jurisdiction over the plaintiff's state law negligence claims against each of the defendants. See 28 U.S.C. §1367.

In addition to the claims the plaintiff proposed, the court also considers whether the plaintiff states access to the courts or due process claims against any of the defendants.

To state an access to the courts claim, the plaintiff must allege that prison officials failed to help him prepare and file meaningful legal papers, and that he lost a valid legal claim or defense because of the challenged conduct. See Ortiz v. Downey, 561 F.3d 664, 671 (7th Cir. 2009); Marshall v. Knight, 445 F.3d 965, 969 (7th Cir. 2006). The obligation of prison officials to help prisoners prepare and file legal papers is not literal, and may be satisfied by, for example, providing access to a law library. See In re Maxy, 674 F.3d 658, 660 (7th Cir. 2012); McCree v. Grissom, 657 F.3d 623, 623–24 (7th Cir. 2011). The complaint must contain some information connecting the alleged denial of access to legal materials and the unfavorable legal result complained of. Ortiz, 561 F.3d at 671; Tarpley v. Allen Cnty., Ind., 312 F.3d 895, 899 (7th Cir. 2002).

In his complaint, the plaintiff alleges that defendants J.D., Swiekatowski, Holterman, Foster and Owens deprived him of access to legal materials and the law library. He believes that their actions caused him to lose his petition for a writ of *habeas corpus*. This is sufficient to state an access to the courts claim against these defendants.

Turning to due process, "[i]n the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial

12

decision-maker, and a written explanation for the discipline, that is supported by some evidence in the record." Piggie v. Cotton, 342 F.3d 660, 662 (7th Cir. 2003) (internal citations and quotations omitted).

To be entitled to the due process protections discussed above, a plaintiff must first show that he has a protected liberty interest. Domka v. Portage Cnty., Wis., 523 F.3d 776, 779-80 (7th Cir. 2008) (quoting Minch v. City of Chicago, 486 F.3d 294, 302 (7th Cir. 2007)). A liberty interest exists when prison officials restrain an inmate in a way that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

The plaintiff states that Pusich was the hearing officer for all six of the false conduct reports filed by Swiekatowski and Holterman, and that Pusich "misused disciplinary procedures in retaliation against the plaintiff." Dkt. No. 1 at 4. The plaintiff does not specify the length of his sentence; he says only that Pusich sanctioned him to "long term segregation." Id. The court will interpret "long term segregation" to mean a length of time that would implicate a liberty interest, such that it would entitle the plaintiff to due process protections. Further, construing the plaintiff's allegations liberally (which the court must do at the pleading stage), the court concludes that the plaintiff has successfully pled that Pusich was not an impartial decision-maker, thus violating the plaintiff's right to due process.

13

### III. CONCLUSION

The court **ALLOWS** the plaintiff to proceed on First Amendment retaliation claims against the defendants.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the court will send electronic copies of plaintiff's complaint and this order to the Wisconsin Department of Justice for service on the state defendants.

The court **ORDERS** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within **sixty (60) days** of receiving electronic notice of this order.

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send copies of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 9th day of October, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge